ANNARÉ L. LOUBSER,                    )
                                      )
        Plaintiff,                    )
v.                                    )        4:04-cv-75-AS
                                      )
UNITED STATES OF AMERICA, *et al.*,   )
                                      )
        Defendants.                   )

## MEMORANDUM OPINION & ORDER

Helpful to this case, is the Honorable Judge Tinder's language in *Indianapolis Minority*

*Contractions Association, Inc. v. Wiley*, 1998 WL 1988826 (S.D.Ind.,1998) (aff'd 187 F.3d 743 (7th

Cir. 1999)) prior to his elevation to the Seventh Circuit Court of Appeals, as follows:

> This case illustrates the difference between rhetoric and proof in a court of law . . .
> . As seen through the exacting lens of the summary judgment process, the Plaintiffs'
> bold but unsupported claims fail. While perhaps persuasive as rhetoric, the strong
> conclusions of the Plaintiffs . . . do not survive the careful scrutiny required in
> litigation. Word and theories which play well in political discussions and media
> accounts do not necessarily meet the legal standards appropriately applied to all
> lawsuits. Because much has been written and filed in this lawsuit, much is being
> written here to explain its demise, both procedurally and substantively.

*Id.*

This matter is before the Court on twelve pending motions. Currently, there are five Motions

for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56, filed with the Court as

follows: Brent Robert Dechert on February 1, 2008 (Docket No. 583); Justice Law Office, Courtney

B. Justice, and Corinna Montine on January 31, 2008 (Docket No. 573); R. Dennis Hoover,

Alexander Pala, and William B. Weist on January 31, 2008 (Docket No. 576); Charles Traylor on

January 31, 2008 (Docket No. 578); and Cathy Fishel, Steven Fishel, Terry Smith, and White County

Title & Abstract Company on January 29, 2008 (Docket No. 587). Additionally, there are five

Motions to Strike, pursuant to Federal Rule of Civil Procedure 56(e), filed with the Court as follows: Annaré Loubser on June 11, 2008 (Docket No. 624); J R. Dennis Hoover, Alexander Pala, and William B. Weist on May 31, 2008 (Docket No. 615 and 616); and Justice Law Office, Courtney B. Justice, and Corinna Montine on May 30, 2008 (Docket No. 611 and 612). Lastly, Annaré Loubser has filed two miscellaneous motions with the Court as follows: a Motion for Extension of Time on May 1, 2008 (Docket No. 592) and a Motion to Amend Response on May 2, 2008 (Docket No. 598).

## I. BACKGROUND

In her 140-page[1] Second Amended Complaint (Docket No. 210), Annaré Loubser (hereinafter "Ms. Loubser"), pro se, has alleged a panoply of claims against more than 40 different individuals, including public officials, public employees, and private citizens under the Thirteenth and Fourteenth Amendments to the United States Constitution, and under 42 U.S.C. §§ 1981, 1983, 1985, and 1994. Ms. Loubser's claims principally stem from allegations that her state divorce proceedings were fixed as a result of a conspiracy against her to deprive her of her livelihood, due to her national origin.[2] (Second Amended Complaint ¶ 59-61, 64, 69-74, 311, 547, 565-566, 572-573, 579, 581, 585, 589-590, 593-594, 596-600, 603, 619, 636-638, 657-658). Ms. Loubser also claims that the conspiracy was intended to achieve the following: destroy the impartiality of Judges and state employees in her state court proceeding, deprive her of her livelihood, deny her Due Process of law, deny her the

---

[1]     The Second Amended Complaint consists of 138 pages of text, with pages 3 and 4 left blank.

[2]     Ms. Loubser also alleged discrimination based on race, age, sex, and the fact that she is not a dwarf. However, she has later admitted that this was a mistake in her pleadings. (Loubser Deposition, Docket No. 572(1) at 207, 221) (all numbers referred to in Loubser Deposition indicate page numbers). As such, all claims will be considered to be premised upon national origin discrimination.

pursuit of happiness, deny her equal protection of the law, and subject her to involuntary servitude. (*Id.* at ¶ 8, 59-61, 64-74, 138, 152, 154, 202, 228, 437, 445-446, 451, 456-457, 529, 547, 549, 565-570, 572-577, 579, 581, 583, 585-587, 591-594, 596-600, 602-603, 606, 612-616, 619, 625-626, 630-634, 636-638, 640, 647, 653-658, 661-666).

On June 30, 2005, this Court entered an order dismissing all claims against all Defendants. (Docket No. 155). This order was appealed to the United States Court of Appeals for the Seventh Circuit. The Seventh Circuit affirmed the judgment with respect to the dismissal of Judge Thacker and Judge Kepner as Defendants, but otherwise vacated and remanded for further proceedings consistent with the opinion in *Loubser v. Thacker*, 440 F.3d 439 (7th Cir. 2006). Since the Seventh Circuit's decision, many of the Defendants included in Ms. Loubser's Second Amended Complaint were dismissed from the case.[3] As to the remaining Defendants, the Court now considers all pending

---

3    The Seventh Circuit in *Loubser* dismissed Judge Thacker and Judge Kepner, holding that they have absolute immunity from damage claims stemming from their judicial conduct. *See* 440 F.3d at 442.

Thereafter, Meg Babcock, an employee in the State House in Indianapolis, was dismissed with prejudice on June 26, 2007. (Docket No. 261). This Court found she "enjoyed the same species of absolute immunity that is reflected by the Court of Appeals in this circuit in *Kissel v. Breskow*, 579 F.2d 425 (7th Cir. 1978)."

Additionally, this Court dismissed with prejudice, Kathy Freeman, official court reporter of Benton Circuit Court and Sondra Rumple, reporter of White Circuit Court, on June 26, 2007 (Docket No. 261), as Ms. Loubser's Complaint did not meet the requisite showing of intent. In regards to Ms. Freeman, Ms. Loubser erroneously served her with a subpoena on November 1, 2007. (Docket No. 428). At this time, Ms. Freeman was added as a miscellaneous party. However, since Ms. Freeman is not a party to any of the pending motions or remaining lawsuit, this Court will not consider any allegations against her. *See In re Energy Cooperative*, 814 F.2d 1226, 1234-1235 (7th Cir. 1987) (citing *Phillips v. Shannon*, 445 F.2d 460, 462 (7th Cir. 1971)).

Finally, this Court found that Defendants who are here solely because they gave testimony in the related state judicial proceedings are entitled to the species of immunity mentioned in *Briscoe v. LaHue*, 460 U.S. 325, 335 (1983) and *Butz v. Economou*, 438 U.S. 478, 512 (1978). This ruling applied to the following Defendants, disimissing them with prejudice:

motions.

## II. FACTS IN AGREEMENT

Ms. Loubser is a white South African who has resided in Monticello, Indiana since 1991. (Loubser Depo. at 11, 14). Ms. Loubser met Alexander Pala (hereinafter "Pala") after moving to Indiana and they married in 1994. (*Id.* at 13, 27). At the time of their marriage, Ms. Loubser was aware that Pala was a dwarf and, as such, was subject to health conditions which would become worse over time. (*Id.* at 13). Ms. Loubser became Pala's Social Security Representative, helped him apply for disability benefits and testified to his physical inability to work. (*Id.* at 144-125, 220). In late-July or early-August of 2001, Pala became aware that Loubser was having an affair. (*Id.* at 135-136). Shortly thereafter on August 14, 2001, Pala filed for divorce. (*Id.* at 21). Judge Robert Thacker presided over the final divorce hearing on October 17-18, 2002. (*Id.* at 4, Exhibit A). While the matter was under advisement, Ms. Loubser was found in contempt of court by Judge Thacker. (*Id.* at 218, Exhibit A). Ms. Loubser appealed the Order on February 17, 2003. (Loubser Depo. at Exhibit A). Pala also filed a cross-appeal. (*Id.* at 177). The Indiana Court of Appeals affirmed the decision and the Indiana Supreme Court denied Loubser's petition to transfer. (*Id.* at Exhibit A).

## III. FACTS IN CONTENTION

Ms. Loubser alleges that a conspiracy was formed on August 1, 2001. This set in motion the series of events that Ms. Loubser alleges amount to a conspiracy. This Court is acutely aware that Ms. Loubser is proceeding in this case pro se and, as such, her complaint is held to "less stringent

---

William Roth; Candace Roth; Gregory Roth; Rusty Roth; Kindra Roth; Jillian Roth; Roth Jewelers; David Diener; Diener Supply & Hardware; Ronald Halsen; Halsen Brothers Sheet Metal & Air Conditioning; Michael Hamilton; Douglas Radersdorf; Radersdorf & Associates, PC; Thomas Grzesik; Thomas Grzesik & Associates, Inc; Lawrence Culp and Frederick Henney.

 Ms. Loubser is proceeding in this case pro se and, as such, her complaint is held to "less stringent

standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Kyle v. Patterson*, 196 F.3d 695 (7th Cir. 1999) ("[I]t is well settled law in this circuit that pro se complaints are not held to the stringent standards expected of pleadings drafted by lawyers. Rather, pro se complaints are to be liberally construed."). However, "it must be remembered that even 'pro se pleadings are required to meet a minimum standard of particularity.'" *Williams v. Bierman*, No. 93-1212, 1995 WL 21543 at *5 (7th Cir. Jan 18, 1995) (citing *Tarkowski v. Robert Bartlett Realty Co.*, 644 F.2d 1204, 1207 (7th Cir. 1980) (footnote omitted)).

Yet, throughout her complaint, Ms. Loubser makes voluminous general allegations of conspiracy against various defendants that are mere suppositions lacking in evidentiary support.[4] While giving the appropriate deference to her status as a pro se plaintiff, the Court will nonetheless discuss and consider only those allegations which Ms. Loubser has supported with specific evidence. *Williams*, 1995 WL 21543 at *5 ("This Court need not accept conclusory allegations completely lacking evidentiary support") (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)); *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) ("Conclusory allegations, unsupported by specific facts, will not suffice.") (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). Moreover, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient..." *Anderson*, 477 U.S. at 252; *Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008)

---

4    On page 19 of the Second Amended Complaint, Ms. Loubser re-starts her numbering at 97, thus duplicating numbers 97-103. To reflect this, asterisks (*) have been placed next to the second set of paragraphs numbered 97-103. *See e.g.* ¶ 8, 57-58, 60-61, 64, 68-74, 104, 102*, 103*, 150, 154-156, 163-164, 202-203, 223, 229-236, 239-245, 247-254, 258-270, 273-281, 295, 299-300, 310-315, 333, 337-341, 348-351, 354-356, 371-372, 376, 382, 388-390, 395-396, 403, 408-411, 415-416, 419-420, 422, 435-437, 444-446, 458, 462, 530-533, 535-536, 540, 554, 565-567, 572, 585, 589, 596, 618, 628, 636, 640-641, 645-646, 648.

(citing *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000); *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001) ("[W]e cannot fill the void by crafting arguments and performing the necessary legal research."). Accordingly, the Court will now summarize the allegations, supported with specific evidence, which Ms. Loubser has made against each of the remaining Defendants.

A.    Alexander Pala

Ms. Loubser maintains that Pala, her ex-husband, was the organizer of the conspiracy and that he "spent all of his days getting everyone to go against her." (Loubser Depo. at 152). Ms. Loubser contends that in connection to the divorce proceedings, Pala conspired with R. Dennis Hoover (hereinafter "Hoover") to run up legal bills, deny her access to documents, convince witnesses to commit perjury, hide assets from the court, use ties in the community to influence Judge Thacker, and act in concert with Judge Thacker to obtain a 70/30 split of the assets in favor of Pala. (Second Amended Complaint ¶ 138-139, 150-152, 154, 219-220, 223, 225, 227-228, 229-236, 239, 247-251, 254, 258-265, 275, 278, 281, 295, 313, 334, 339, 353-355, 541).

Ms. Loubser points to several alleged events as evidence of Pala's participation in the conspiracy. These include: Pala and his attorney Hoover allegedly concealing Hoover's representation to the court;[5] Pala socializing with other Defendants and with Judge Thacker (*Id.* at ¶ 238, 321); the appointment of Candace Roth as Pala's Social Security Representative (*Id.* at ¶ 162); Pala and Hoover laughing at Ms. Loubser when she was upset at a comment made by Brent Dechert (hereinafter "Dechert");[6] Pala and Dechert staying in Hoover's office after Ms. Loubser had

---

5       *See infra* III (B).

6       *See infra* III (L).

left[7] (*Id.* at ¶ 200-201); Pala laughing while Ms. Loubser's witnesses were testifying (*Id.* at ¶ 316); Pala saying to Judge Thacker "goodbye judgee wudgee, I will see you around town," while they were in the courtroom and laughing at the comment (*Id.* at ¶ 320, 322); Pala, Judge Thacker, Courtney Justice (hereinafter "Justice"), Justice Law Office, Hoover, William Weist (hereinafter "Weist"), and Judge Kepner[8] conspiring with Charles Traylor (hereinafter "Traylor") to deprive Ms. Loubser of where she wants to live;[9] and Pala receiving $2,500 from Hoover from a trust account kept on behalf of Pala which Ms. Loubser alleges represents an effort to conceal money from the court. (*Id.* at ¶ 226, 228).

Further, Ms. Loubser maintains that because Pala, Theresa Lepper (hereinafter "Lepper"), and others[10] were present at the marital home when Ms. Loubser arrived to get her personal belongings, they were forming a conspiracy against her. (Loubser Depo. at 135, 141; Second Amended Complaint ¶ 100-102). She has pointed to no other evidence in support of this incident other than the Defendants' alleged presence at the home.

Lastly, Ms. Loubser alleges that Pala was involved in altering the transcript with Justice, Hoover, and Weist.[11]

---

7    *See infra* III (B).

8    Judge Rex Kepner was appointed as Special Judge in the state divorce proceeding on April 27, 2004.

9    *See infra* III (N).

10   "Others" refers to several dismissed Defendants and other non-parties to this lawsuit.

11   *See infra* III (E).

B.     R. Dennis Hoover

Most of Ms. Loubser's allegations against Hoover, Pala's previous counsel in the state divorce proceedings, are identical to those alleged against Pala. Ms. Loubser alleges that Hoover concealed his representation of Pala to the court by not filing his appearance until May 14, 2002, when, in fact, he began representing Pala on April 18, 2002. (Second Amended Complaint ¶ 132-133, 136-137). Further, Ms. Loubser alleges that she was told to wait in a side room while counsel for the parties, Hoover and Dechert, met with Judge Thacker in his office. (*Id.* at ¶ 141-142). In this meeting, Ms. Loubser claims that Hoover asked Thacker to award 70% of the assets to Pala. (*Id.* at ¶ 143). Additionally, she maintains that Dechert asked Judge Thacker to recuse himself and Judge Thacker refused. (*Id.* at ¶ 143-152). Ms. Loubser also claims that Hoover had David Diener, a previously dismissed Defendant, influenced Judge Thacker. (Loubser Depo. at 186, 194). As evidence, she points to an alleged meeting Hoover had with Diener before trial to prepare him for his testimony. (*Id.* at 195). Moreover, Ms. Loubser alleges that Hoover, Pala, Judge Thacker, Justice, Justice Law Office, Weist, and Judge Kepner conspired with Traylor to deprive her of where she wants to live.[12] Finally, Ms. Loubser alleges that Hoover participated in altering the transcript of the divorce proceeding[13].

C.     William Weist

Weist is an attorney who was retained by Hoover to serve as local counsel. (Weist Answers to Interrogatories, Docket No. 509). Ms. Loubser alleges that Weist was hired by Pala because of his close personal relationship with Judge Kepner, in order to influence him. (Loubser Depo. at

---

12     *See infra* III (N).

13     *See infra* III (E).

145). As evidence, she points to the fact that Judge Kepner said they used to be friends when they were both prosecutors. (*Id.* at 147). Ms. Loubser also alleges that Weist, Pala, Judge Thacker, Justice, Justice Law Office, Hoover, and Judge Kepner conspired with Traylor to deprive her of where she wants to live.[14] Additionally, she maintains that Weist was involved in altering the transcript of the divorce proceeding.[15]

D.    Terry Smith

Terry Smith (hereinafter "Smith") briefly represented Pala in the divorce proceeding, entering his appearance on April 3, 2002 and withdrawing on April 17, 2002.[16] Ms. Loubser has three principal allegations against Smith. First, she alleges that Smith racially profiled her as a "F***ing South African B***h who makes too much f***ing money" in front of Judge Thacker at a New Year's Party on or about December 31, 1998 at Tippecanoe Country Club. (Second Amended Complaint ¶ 50, 84, 110, 212; Loubser Depo. at 18, 96, 119). The only evidence Ms. Loubser has of this comment is her statement that it happened. She has not provided any witnesses to validate this statement and Smith denies ever making the statement. (Loubser Depo. at 124). Additionally, it should be noted that while Ms. Loubser claims this comment was very painful for her, she and Pala hired Smith as their attorney after the comment was made. (Loubser Depo. at 123).

---

14    *See infra* III (N).

15    *See infra* III (E).

16    Additionally, Smith jointly represented Loubser and Pala in a property dispute from March 14, 2000 until its favorable conclusion on March 10, 2001. (Smith Affidavit, Docket No. 590, #3). Further, Smith is president of White County Abstract and Title Company, Inc., also listed as a Defendant in this action. *Id.*

Next, as evidence of the conspiracy to deprive her of her livelihood and to deny her access to records, Ms. Loubser points to the fact that Smith was an attorney for White County Memorial Hospital in 1998, and from 2000 to 2002, and that he is the owner of White County Abstract & Title Company. (Second Amended Complaint ¶ 50, 85, 86, 94, 121, 169).

Last, Ms. Loubser alleges that she was "harrassed from obtaining documents" and points to a letter written by Smith to Dechert, her attorney at the time, stating that Loubser could go to White County Abstract and Title Company Monday through Friday, during normal business hours. (Second Amended Complaint ¶ 204, 219).

E.    Courtney Justice & Justice Law Office

Ms. Loubser's claims against Justice, her attorney in the divorce proceedings, and Justice Law Office are one in the same. Ms. Loubser admits that she named both in her complaint because "one is the business and one is the person." (Loubser Depo. at 70). Accordingly, the Court will consider claims against Justice and Justice Law Office together.

Ms. Loubser makes general allegations of conspiracy against Justice for the following: using his position in the community to influence Judge Thacker, committing perjury, altering documents, failing to present evidence in Ms. Lousber's case-in-chief, failing to change venue, and failing to call witnesses. (Second Amended Complaint ¶ 247, 250-251, 253-255, 258-259, 260, 261-265, 270, 273-275, 279, 288, 310-315, 334, 337-339, 353-354, 376, 395-396, 401, 419-421, 511-512, 536). Ms. Loubser points to several alleged statements by Justice as evidence of Justice's involvement in the conspiracy. First, Ms. Loubser contends that Justice told her that she did not have a chance in court, because she is the foreigner and Pala is the "local boy." (*Id.* at 255). Second, Ms. Loubser points to a statement by Justice that he had to be careful with the witnesses that are friends with Judge

10

Thacker. (*Id.* at 292). Third, Ms. Loubser states that Justice said that "there is a silent code of honor among judges that the judge will rule against you, because you turned Judge Thacker into the Indiana Commission on Judicial Qualifications." (*Id.* at 486). Fourth, Ms. Loubser claims that Justice's letter advising her he would not file a Motion to Correct Errors is further evidence of the conspiracy to corrupt the state court proceedings. (*Id.* at 388-391; Loubser Depo. at Exhibit E).

Ms. Loubser also alleges that Justice told her to come to court late so that he would have the chance, along with Judge Kepner, Hoover, Pala, and Weist to alter the transcript. (Second Amended Complaint ¶ 512, 515). Ms. Loubser contends that the purpose of the alleged alteration was to remove Pala's testimony in which he allegedly stated "he could pull strings to get things done in White County." (*Id.* at 511). As evidence, Ms. Loubser points to the alleged fact that the aforementioned Defendants were in the courtroom together when Loubser arrived. (*Id.* at 510).

Last, Ms. Loubser alleges that Justice, Justice Law Office, Pala, Judge Thacker, Weist, and Judge Kepner conspired with Traylor to deprive her of where she wants to live.[17]

F.    Corinna Montine

Corinna Montine (hereinafter "Montine") is Justice's secretary and, because of this position, Ms. Loubser alleges that Montine participated in the conspiracy. As evidence of her involvement in the conspiracy, Ms. Loubser points to two statements by Montine. First, Ms. Loubser alleges that Montine stated to her, "you have a lot of faith in the justice system" to deter her from filing this federal suit. (Second Amended Complaint ¶ 518). Second, as evidence of Montine's involvement in the conspiracy, Ms. Loubser contends that Montine stated to her "I don't know why I am typing these subpoena's [sic] because Hoover and Pala will just move stuff." (*Id.* at 538).

---

17    *See infra* III (N).

G.  Indiana Abstract & Title Co.

Ms. Loubser alleges that Indiana Abstract & Title Co. is involved in the conspiracy because Ms. Loubser spoke with the manager, Diana Blackwell, on or about July 25, 2003, and was allegedly told that she couldn't come get documents because Theresa Lepper works for the company and is friends with Pala.

H.  White County Title & Abstract Co.

Ms. Loubser alleges that White County Title & Abstract Co. (hereinafter "WCTA") is involved in the conspiracy because an unknown employee allegedly told Ms. Loubser that she has to subpoena the title documents and closing statements of the marital property in order to get access to them. (Second Amended Complaint ¶ 166, 171, 173).

I.  Theresa Lepper

Lepper, an employee of Indiana Abstract & Title Co., is alleged to be involved in the conspiracy to influence Judge Thacker because Lepper and other Defendants allegedly socialized together. (Second Amended Complaint ¶ 238).

J.  Steven Fishel

Steven Fishel (hereinafter "Mr. Fishel"), who is part owner of WCTA, is alleged to have joined the conspiracy when he failed to produce records of WCTA. (Second Amended Complaint ¶ 166; Loubser Depo. at 104-116). Ms. Loubser acknowledges that WCTA allowed Dechert, her attorney at the time, to inspect the records. (Loubser Depo. at 105).

Ms. Loubser additionally contends that Mr. Fishel participated in the conspiracy because she allegedly saw him talk to Judge Thacker on December 31, 2002. (Loubser Depo. at 116).

K.    Cathy Fishel

Cathy Fishel (hereinafter "Mrs. Fishel"), wife of Mr. Fishel, is alleged to be part of the conspiracy to deny Ms. Loubser access to documents at WCTA and to influence Judge Thacker. The only evidence Ms. Loubser has of Mrs. Fishel's involvement is her presence at a social gathering where Judge Thacker was also present. (Loubser Depo. at 104).

L.    Brent Dechert

Dechert's alleged involvement in the conspiracy involves his representation of Ms. Loubser in the state divorce proceedings where he allegedly conspired to obtain a pre-determined outcome of a 70/30 split of the assets and large spousal maintenance award to Pala. (Second Amended Complaint ¶ 150-151). Her evidence is a statement, allegedly made on July 30, 2002, where Dechert told Ms. Loubser that "her only choice for settlement is to move back home or the judge will give everything to Pala, he will value the business high and you will have to pay half to Pala and he will award a large sum of maintenance to Pala." (*Id.* at ¶ 197). Ms. Loubser also alleges that on July 30, 2002, Dechert laughed at her and continued to meet with Hoover and Pala after she left. (*Id.* at ¶ 200-201).

M.    David Stone IV

David Stone (hereinafter "Stone") was Ms. Loubser's appellate attorney. (Second Amended Complaint ¶ 26). Ms. Loubser's only allegations against Stone relate to not correcting the tax year of Ms. Loubser's business, not correcting the value of the home, and not timely filing a Motion for Relief of Judgment on her behalf. (*Id.* at ¶ 407-413, 416, 420).

N.    Charles Traylor

Ms. Loubser alleges that Traylor, Ms. Loubser's bankruptcy attorney, entered the conspiracy

to deprive her of her livelihood, her liberty to choose where she wants to live, and her pursuit of happiness. (Second Amended Complaint ¶ 451-453, 456-457). Additionally, Ms. Loubser alleges that Traylor conspired with Judge Thacker, Justice, Justice Law Office, Hoover, Pala, Weist, and Judge Kepner to leave her with $70 per month to live on if she moved to Indianapolis. (*Id* at ¶ 451-452). As evidence, Ms. Loubser contends that Traylor told her "to cancel her apartment in Indianapolis." (*Id.* at ¶ 453).

O.     Kevin Smith

Kevin Smith is not mentioned in Ms. Loubser's Second Amended Complaint.

## IV. STANDARD OF REVIEW

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255; *Nucor Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The moving party bears the burden of identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" that the moving party believes demonstrate an absence of a genuine issue of material fact. *Celotex Corp.,* 477 at 323. Once this burden is met, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989). "[A] party who bears the burden of proof on a particular issue may not rest on its pleading,

14

but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment is proper.

## V. Analysis

A.    Miscellaneous Motions by Plaintiff

On May 1, 2008, Ms. Loubser submitted a Motion for Extension of Time (Docket No. 592) to respond to the Summary Judgment Motion by Defendants Smith, WCTA, Mr. Fishel, and Mrs. Fishel. (Docket No. 587). However, on May 2, 2008, before this Court ruled on her Motion for Extension of Time, Ms. Loubser submitted a Response and Objection (Docket No. 600) and a Memorandum of Law (Docket No. 601). Thus, the filings will be considered and the Court **DENIES** this Motion as moot.

Additionally, on May 2, 2008, Ms. Loubser filed a Motion to Amend (Docket No. 598) her response (Docket No. 595) to the Summary Judgment Motion by Defendants Justice, Justice Law Office, and Montine (Docket no. 573). Ms. Loubser served corrected copies of her response to Defendants on May 1, 2008. The amended filings are also considered and the Court **DENIES** this Motion as moot.

B.    Motions to Strike

This Court has before it Motions to Strike filed by both Ms. Loubser and several Defendants. Before the merits of the Defendant's Motions for Summary Judgment can be addressed, it is necessary to rule on these Motions.

(1)    Motions to Strike by Defendants

15

Defendants Hoover, Pala, and Weist seek to strike Ms. Loubser's Affidavit (Docket No. 597) from the summary judgment record. Defendants Justice, Justice Law Office, and Montine also seek to strike this document from the summary judgment record.

Federal Rule of Civil Procedure 56(e) states, in relevant part:

A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. If a paper or party of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit.

*Id.*

Defendants Justice, Justice Law Office, and Montine, in their Motion to Strike (Docket No. 611), do not provide detail regarding which of the three hundred and eighty-two (382) paragraphs of Ms. Loubser's affidavit should be stricken. Instead, they argue that the entire document is to be stricken because it contains argumentative, non-relevant, scandalous allegations, and is based on hearsay. This Court will not strike the entirety of the Affidavit outright because it cannot be said that all of the Affidavit is not based on Ms. Loubser's personal knowledge. Further, it cannot be said that all of the Affidavit would be inadmissible, nor is it shown that Ms. Loubser is not competent to testify on all of the matters stated. Therefore, for failure to specify which portions of the Affidavit are to be struck, this Court declines to expend its limited judicial resources to do so, except as accomplished in relations to Defendants Hoover, Pala, and Weist's comprehensive Motion to Strike. Therefore, Defendants Justice, Justice Law Office, and Montine's Motion to Strike the entirety of the Affidavit is **DENIED**.

Defendants Hoover, Pala, and Weist argue in their Motion to Strike (Docket No. 615), that Ms. Loubser's Affidavit should be stricken because it is mostly duplicative of the allegations,

16

assertions and conclusions found in her Second Amended Complaint. Defendants argue that various specified portions of the Affidavit should be stricken for the following reasons: (1) Ms. Loubser's allegations are conclusory statements speculating as to the thoughts, motives, intentions and actions of others; (2) Ms. Loubser lacks personal knowledge and/or bases her knowledge on hearsay; (3) Ms. Loubser fails to authenticate or identify with specificity documents relied upon, referred to, and used; and (4) Ms. Loubser's Affidavit exemplifies obvious exaggerations.

The majority of Ms. Loubser's Affidavit, even if admitted, does not affect the outcome of the summary judgment determination. Therefore, the Court has resolved to let the record stand for the purposes of summary judgment, except to strike the following paragraphs:

> Ms. Loubser alleges that Hoover and Pala counseled Candy Roth to influence Judge Thacker. (¶ 302).
>
> Ms. Loubser alleges that Justice told her the incorrect time to come to the hearing on July 1, 2004 so that the transcript could be altered by conspirators Judge Kepner, Justice, Justice Law Office, Hoover, Pala, and Weist. (¶ 333).
>
> Plaintiff alleges that Justice, Justice Law Office, and Montine "hindered and impeded her" from obtaining evidence to file her § 1983 claim. (¶ 348).
>
> Plaintiff alleges that Judge Kepner conspired to assist Defendants Weist, Hoover, Pala, Justice, Justice Law Office, and Montine to conceal Pala's assets and to deprive her of her livelihood because they considered her "a f***ing South African B***h who makes too much money." (¶ 361).

The Court strikes these paragraphs because, although Ms. Loubser asserts that Defendants engaged in the aforementioned activities to cause her harm, her conclusory allegations are completely unsupported by evidence in the record. Such speculation is not admissible, nor does it create genuine issues of material fact. Accordingly, Defendants Hoover, Pala, and Weist's Motion to Strike is **GRANTED IN PART, DENIED IN PART.**

Next, Defendants Justice, Justice Law Office, and Montine argue in their Motion to Strike (Docket No. 612) that Ms. Loubser's Response and Objection to Motion for Summary Judgment (Docket No. 595), Designation of Evidence (Docket No. 603), and Supplemental Designation of Evidence (Docket No. 609) should be stricken, in their entirety, from the summary judgment record as repetitive, untimely filed, and not in compliance with the page requirements of Local Rule 7.1

Local Rule 7.1 provides, in part:

> Except by permission of the court, no brief shall exceed 25 pages in length...Permission to file briefs in excess of these page limitations will be granted only upon motion supported by extraordinary and compelling reasons . . .

N.D. Ind. L.R. 7.1.

It is well established that courts are required to give liberal construction to pro se pleadings. *Kaba v. Stepp*, 458 F.3d 678, 687 (7th Cir.2006). However, it is also well established that pro se litigants are not excused from compliance with procedural rules. *McNeil v. United States*, 508 U.S. 106, 113 (1993) (noting that the Supreme Court has "never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel"); *Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008). Further, as the Supreme Court has noted, "'in the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.'" *Anderson v. Hardman,* 241 F.3d 544, 545 (7th Cir. 2001) (*quoting Mohasco Corp. v. Silver,* 447 U.S. 807, (1980)). *See also Members v. Paige,* 140 F.3d 699, 702 (7th Cir.1998) ("[R]ules apply to uncounseled litigants and must be enforced."). Since Ms. Loubser's three submissions consist of

one thousand one-hundred eighty-nine (1,189) pages,[18] are not accompanied by a proper motion, and clearly go beyond the established boundaries set forth by Local Rule 7.1, this Court **GRANTS** Defendant Justice, Justice Law Office and Montine's Motion to Strike.

Lastly, Defendants Hoover, Pala, and Weist seek to strike Ms. Loubser's Response and Objection to Hoover, Pala, and Weist's Motion for Summary Judgment (Docket No. 593) asserting that it is not in compliance with Local Rule 56.1(a).

> Any party opposing the motion...shall include in its text or appendix thereto a "Statement of Genuine Issues" setting forth, with appropriate citations to discovery responses, affidavits, depositions, or other admissible evidence . . .

N.D. Ind. L.R. 56.1.

Defendants argue that Ms. Loubser's sixty-seven (67) page, approximately four hundred thirty (430) paragraph document[19] fails to cite admissible evidence, fails to authenticate the alleged exhibits, and contains speculation, hearsay, and conclusory statements with factual spins. Accordingly, Defendants seek to have the entire document struck. However, the _entire_ document does _not_ fail to cite admissible evidence, fail to authenticate, nor is the _entire_ document based on speculation, hearsay or conclusory statements with factual spins. As such, the Court strikes only those paragraphs, explicitly addressed in Defendant's brief, containing conclusory allegations

---

18    Ms. Loubser's Motion Response and Objection to Motion for Summary Judgment (Docket No. 595) consists of sixty-six (66) page containing three hundred ninety-six (396) paragraphs. Her Designation of Evidence consists of six hundred and six (606) pages. Finally, her Supplemental Designation of Evidence consists of five hundred and seventeen (517) pages.

19    On page 10, after number 83, Ms. Loubser re-starts her numbering at 30, thus duplicating 30-83. To reflect this, asterisks (*) have been placed next to the first set of paragraphs numbered 30-83.

completely unsupported by evidence in the record. Consequently, paragraphs 30\*, 32\*, 48\*, 51\*-52\*, 74\*, 80\*, 83\*, 33, 41, 47, 49, 59, 78, 82-84, 90, 131, 133, 201-202, 219, 254, 259-260, 287, 290, 294, 373, 375 are struck from the summary judgment record. Again, such speculation does not create a genuine issue of material fact. Defendant's Hoover, Pala, and Weist's Motion to Strike is thus **GRANTED IN PART, DENIED IN PART**.

 (2) <u>Motion to Strike by Plaintiff</u>

Ms. Loubser argues in her Motion to Strike (Docket No. 624) that Defendant Dechert's Motion for Summary Judgment (Docket No. 583), Notice (Docket No. 584) and Brief in Support (Docket No. 585) should be struck for failure to comply with the notice requirements of Local Rule 56.1(e), which states: "If a party is proceeding pro se and an opposing party files a motion for summary judgment, counsel for the moving party must serve a notice upon the unrepresented party as set forth in Appendix C." *See* N.D. Ind. L.R. 56.1(e).

Ms. Loubser correctly points out that Defendant Dechert's Summary Judgment Motion, Notice and Brief in support were mailed to an out-of-date address. However, on July 22, 2008, Ms. Loubser filed a Response and Objection to Defendant Dechert's Motion for Summary Judgment (Docket No. 627) and Memorandum of Law (Docket No. 628). The purpose of the notice requirement is to give the opponent a chance to present evidence that may defeat summary judgment. *Chicago Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624, 627 (7th Cir. 2003). Ms. Loubser's response demonstrates that the purpose of the notice requirement was served and that the error was harmless. Thus, Ms. Loubser's Motion to Strike is **DENIED**.

C. <u>Summary Judgment Motions by Defendants</u>

 Due to the interrelation of Ms. Loubser's allegations against various Defendants, the Court

will discuss each cause of action in turn. Furthermore, since the close of discovery on December 31, 2007, Ms. Loubser has filed memoranda in response to each Motion for Summary Judgment.[20]  In each response to a particular motion, Ms. Loubser incorporates by reference all other documents she has filed in the case. Thus, over the course of her two-hundred and eighty (280) pages of responsive pleadings, Ms. Loubser has had ample opportunity to present evidence supporting her allegations and showing a genuine issue of material fact. She has failed to do so.

(1)　　Section 1981

Section 1981 guarantees equal rights under the law and the right to make and enforce contracts. In part, § 1981 provides that:

> All persons withing the jurisdiction of the United States shall have the same right...to make and enforce contracts...includ[ing] the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C. § 1981 (a) & (b) (2000). To establish a claim under § 1981, a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) the defendant acted with an intent to discriminate against the plaintiff on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute (*i.e.,* make and enforce contracts, sue and be sued, give evidence, etc.). *Rivera v. AuthorHouse*, No. 3:07-cv-268, 2008 WL 131046 at *6 (7th Cir. Jan 10, 2008) (citing *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 7 F.3d 1085, 1087 (2d Cir.1993)). Courts have interpreted § 1981 to include claims of national origin discrimination, such as those alleged by Ms. Loubser. *See, e.g., St. Francis College*

---

20　　*See* Docket Nos. 593 (68 pages); 594 (26 pages); 595 (70 pages); 596 (27 pages); 599 (10 pages); 600 (22 pages); 601 (26 pages); 627 (19 pages); 628 (12 pages).

*v. Al-Khazraji*, 481 U.S. 604, 613 (1987) ("Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics.").

In support of her claim of national origin discrimination, Ms. Loubser alleges that Smith racially profiled her as a "F***ing South African B***h who makes too much f***ing money" in front of Judge Thacker at a New Year's Party on or about December 31, 1998 at Tippecanoe Country Club. (Second Amended Complaint ¶ 50, 84, 110, 212; Loubser Depo. 18, 96, 119). However, Ms. Loubser has failed to identify any witnesses to this comment nor has she alleged that this comment interfered with any of her rights as protected under the statute. While the comment, assuming it was said, is quite inappropriate, it does not render this section applicable to Ms. Loubser's claims, nor does it create a genuine issue of material fact. Accordingly, summary judgment is **GRANTED** in favor of Defendants as to the § 1981 claim.

(2)     Section 1983[21]

Ms. Loubser alleges violations of 42 U.S.C. § 1983 based upon allegations that Defendants violated her rights under the Thirteenth and Fourteenth Amendments to the United States Constitution.

> To state a claim under § 1983 a plaintiff must allege two elements: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the activity deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.

*Case v. Milewski*, 327 F.3d 564, 567 (7th Cir. 2003) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988).

---

21      Defendants Mrs. Fishel, Mr. Fishel, Smith, and WCTA, in their Brief in Support of Summary Judgment (Docket No. 589), argue that Ms. Loubser's § 1983 claims are barred by the applicable statute of limitations. Because the Court grants summary judgment for this claim on other grounds, it need not consider this argument.

*See also Yang v. Hardin*, 37 F.3d 282, 284 (7th Cir. 1994); *Moore v. Marketplace Restaurant, Inc.*
754 F.2d 1336, 1352 (7th Cir. 1985).

As to the first element of a § 1983 claim, the Seventh Circuit has recognized two
circumstances in which defendants may be found to act under color of state law. *Case v. Milewski*,
327 F.3d 564, 567 (7th Cir. 2003). First, a defendant may act under color of state law when the state
has cloaked the defendant(s) in some degree of authority–normally through employment or some
other agency relationship. *Id.* Second, a defendant may act under color of state law when the
defendants have conspired or acted in concert with state officials to deprive a person of his civil
rights. *Case*, 327 F.3d at 567 (citing *Adicks*, 398 U.S. at 152; *Moore,* 754 F.2d at 1352). Because
the brunt of Ms. Loubser's claims stem from allegations of conspiracy and because she does not
allege that the current defendants are employed by the state or involved in some other agency
relationship, the Court will focus on the second circumstance.

In order to establish § 1983 liability through a conspiracy theory, a plaintiff must demonstrate
that:

> (1) a state official and private individual(s) reached an understanding to deprive the
> plaintiff of his constitutional rights, *Starnes v. Capital Cities Media, Inc.,* 39 F.3d
> 1394, 1397 (7th Cir. 1994); and (2) those individual(s) were "willful participants"
> in joint activity with the State or its agents." *Adicks v. S.H. Kress & Co.,* 398 U.S.
> 144, 152 (1970)).

*Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003) (citing *Fries v. Helsper*, 146 F.3d 452, 457 (7th
Cir. 1998)). *See also Moore*, 754 F.2d at 1352 ("In order to establish a conspiracy, the plaintiff must
demonstrate that the state officials and the private party somehow reached an understanding to deny
the plaintiffs their constitutional rights"); *Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d
Cir. 2002) ("To state a claim against a private entity on a section 1983 conspiracy theory, the

complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act.").

Because there will rarely be direct evidence of an agreement between conspirators, a plaintiff can establish the existence of a conspiracy by sufficiently probative circumstantial evidence. *Bell v. City of Milwaukee*, 746 F.2d 1205, 1255 (7th Cir. 1984). Although a conspiracy may be established by circumstantial evidence, the Seventh Circuit has stressed that such evidence cannot be speculative. *Seniff*, 342 F.3d at 785.

Ms. Loubser, throughout her responsive pleadings, has alleged individual instances of the Defendants' conspiracy to deprive her of rights secured by the Fourteenth Amendment. For example, Ms. Loubser aruges that Defendants Justice, Hoover, Pala, and Weist were conspiring with Judge Kepner to alter the transcript in order to deprive her of property and Due Process of law. As evidence, Ms. Loubser points to the fact that the parties were in the same room together and acted shocked to see her when she came to court for a July 1, 2004 hearing. (Second Amended Complaint ¶ 510-515). Also, Ms. Loubser asserts that Defendant Smith's alleged comment in front of Judge Thacker at a New Year's party and Mr. and Mrs. Fishel's conversations with Judge Thacker at a New Year's party show that Judge Thacker is biased and that all Defendants are conspiring with him against her. (Loubser Depo. 17, 108, 118-121, 131-132). Additionally, Ms. Loubser alleges that Justice referred to her as a "foreigner." (Second Amended Complaint ¶ 255). Further, Ms. Loubser claims that on May 28, 2002, Hoover and Dechert were in Judge Thacker's chambers discussing the divorce settlement and conspiring to obtain a 70/30 split in favor of Pala. (Second Amended Complaint ¶ 141-152; Loubser Depo. 184-185).

Even assuming that Ms. Loubser's allegations are true, they are, nonetheless, speculative.

In *Goetzke v. Ferro Corp.*, 280 F.3d 766 (7th Cir. 2002), the Seventh Circuit concluded that the existence of numerous phone calls between alleged conspirators, "standing alone, merely proves that [the individuals] remained in contact . . . . To assert that the calls are evidence of a conspiracy is simply speculation." *Id.* at 778. Similarly, Ms. Loubser has failed to show that the Defendants were conducting any other business, besides discussing the dissolution action, as all parties present were involved in that case. Moreover, "no one supposes that there is any impropriety in a judge's conducting settlement discussions off the record." *Lynch, Inc. v. SamataMason Inc.*, 279 F.3d 487, 491 (7th Cir. 2002) (citing, *Higbee v. Sentry Ins. Co.*, 253 F.3d 994, 996 n. 1 (7th Cir. 2000); *City of Pittsburgh v. Simmons*, 729 F.2d 953, 955 (3d Cir. 1984); *Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157, 1183 (5th Cir. 1978)).

Ms. Loubser also urges this Court to deny summary judgment based on a statement in *Hampton v. Hanrahan*, 600 F.2d. 600 (7th Cir. 1979) which provides that:

> The question whether an agreement exists should not be taken from the jury in a civil conspiracy case so long as there is a possibility that the jury can "infer from the circumstances (that the alleged conspirators) had a 'meeting of the minds' and thus reached an understanding" to achieve the conspiracy's objectives.

*Id* at 621. Throughout her voluminous filings with this Court, Ms. Loubser had failed to provide evidence of such circumstances. As noted by the Seventh Circuit, unsupported conjecture is not competent evidence. *Seniff*, 342 F.3d at 785 (citing *Johnson v. University of Wisconsin-Eau Claire*, 70 F.3d 469, 482 (7th Cir. 1995). *See also Larson v. City of Beloit*, 130 F.3d 1278, 1282 (7th Cir. 1997) (" . . . to survive summary judgment [Plaintiff] needed to do better than to make such broad-brushed conclusory allegations.); *In re Morris Paint & Varnish Co.*, 773 F.2d 130, 136 (7th Cir.1985) (noting "conclusory assertions are insufficient to raise a genuine issue of material fact").

As a result, Ms. Loubser has failed the first prong of the § 1983 test in *Williams v. Seniff*, 342 F.3d at 785, discussed above. She has not offered evidence to create a genuine issue of material fact to show that state officials and private parties somehow reached an understanding to deny Ms. Loubser her constitutional rights, as required by § 1983. Consequently, summary judgment is **GRANTED** in favor of Defendants on Ms. Loubser's § 1983 claims.

### (3)    Section 1985

Ms. Loubser alleges general violations of 42 U.S.C § 1985 against all Defendants. The relevant subsection § 1985 which would provide relief to Ms. Loubser, if sufficiently alleged, falls under subsection three (3). To establish a claim for civil conspiracy under § 1985(3), a plaintiff must demonstrate (1) the existence of a conspiracy, (2) a purpose of depriving a person or class of persons of equal protection of the laws, (3) an act in furtherance of a conspiracy, and (4) an injury to person or property or a deprivation of a right or privilege granted to U.S. citizens. *Alexander v. City of South Bend,* 433 F.3d 550, 556-557 (7th Cir. 2006) (citing *Green v. Benden,* 281 F.3d 661, 665-666 (7th Cir. 2002)). *See also Smith v. Gomez,* 550 F.3d 613, 617 (7th Cir. 2008). Further, Ms. Loubser must show some racial, or otherwise class-based, invidiously discriminatory animus behind the conspirators' actions. *Green,* 281 F.3d at 665. Additionally, she must show that the conspirators acted with a single plan, the general nature and scope of which was known to each conspirator. *Green,* 281 F.3d at 665 (citing *Hernandez v. Joliet Police Dep't,* 197 F.3d 256, 263 (7th Cir. 1999)). Defendants argue that Ms. Loubser has failed to present sufficient evidence that a conspiracy with discriminatory intent existed.[22] Ms. Loubser, on the other hand, bases her national origin

---

22      See Justice, Justice Law Office, and Montine's Brief (Docket No. 574, pages 4-10); Pala, Hoover, and Weist's Brief (Docket No. 577, pages 14-16); Traylor's Brief (Docket No. 579,

26

discrimination claim upon the alleged comment by Smith racially profiling her as a "F***ing South African B***h who makes too much f***ing money" in front of Judge Thacker at a New Year's Party on or about December 31, 1998. (Second Amended Complaint ¶ 50, 84, 110, 212; Loubser Depo. 18, 96, 119; Loubser Response Docket No. 593 ¶ 213). At various times throughout her Complaint, Ms. Loubser imputes national origin discrimination to all other Defendants from Smith's alleged comment. (Second Amended Complaint ¶ 59-61, 64-65, 70-74, 109, 332, 565-566, 570, 572-573, 577, 579, 581, 583, 585, 587, 593-4, 596, 598-600, 619, 636-638, 657). Lastly, Ms. Loubser claims that Justice, specifically, is racially biased towards her because he allegedly mentioned South African apartheid laws in court. (Loubser Depo. 209-210).

Ms. Loubser's only evidence that these alleged comments occurred are her own statements. Without more, such conclusory allegations fail to show that Defendants acted with a single plan to discriminate against her because she is South African. Ms. Loubser's failure to demonstrate class-based discrimination means her claims under § 1985(3) must fail. Accordingly, summary judgment is **GRANTED** in favor of Defendants on Ms. Loubser's § 1985(3) claims.[23]

---

page 3); Dechert's Brief (Docket No. 585, pages 3-5).

23    Even if Ms Loubser had properly presented evidence that, Summary Judgment on her § 1985 claim would still be appropriate because her evidence of overt acts, as required by § 1985 is vague and conclusory. *See Amundsen v. Chicago Park Dist.*, 218 F.3d 712, 718 (7th Cir. 2000) ("Indeed, a conspiracy claim cannot survive summary judgment if the allegations "are vague, conclusionary and include no overt acts reasonably related to the promotion of the alleged conspiracy.") (citing *Spiegel v. Cortese*, 196 F.3d 717, 726-27 (7th Cir.2000)).

(4)     Thirteenth Amendment

Ms. Loubser generally alleges that all Defendants violated her Thirteenth Amendment rights to be free from involuntary servitude. (Second Amended Complaint ¶ 8, 65, 67, 566-570. 573-577, 579, 581, 583, 586-587, 592-594, 597-600, 602-603, 614-616, 625-626, 630-634, 637-638, 656-658). Ms. Loubser argues that the divorce settlement was inflated so as to require her to work more to pay the judgment; thus, subjecting her to involuntary servitude. (Loubser Depo. at 77-79). She also alleges that the divorce settlement has deprived her the right to choose where she wants to live. (Second Amended Complaint ¶ 606-616).

In support of her claim, Ms. Loubser points to *United States v. Kozminski,* 487 U.S. 931 (1988). (Loubser Depo. at 80). In *Kozminski,* the Supreme Court held that the term "involuntary servitude" necessarily means a condition of servitude in which the victim is forced to work for the defendant by the use or threat of physical restraint or physical injury, or by the use or threat of coercion through law or the legal process. *Id.* at 952. The Supreme Court also noted that "in every case in which this Court has found a condition of involuntary servitude, the victim had no available choice but to work or be subject to legal sanction." *Id.* at 943.

Defendants argue that "there is no real issue as to whether or not the judgment against [Ms.] Loubser, which was affirmed by the Indiana Court of Appeals and transferred [sic.] denied by the Indiana Supreme Court, created a condition anywhere close to 'akin to African slavery.'" (Justice, Justice Law Office, and Montine's Brief in Support of Motion for Summary Judgment, Docket No. 573, page 11). Defendants point to a case involving an argument similar to Ms. Loubser's, brought by a former wife, that was ultimately struck down by the Eleventh Circuit. *See Greenberg v. Zingale,* No. 05-10187, 2005 WL 1432471 at * 2 (11th Cir. June 20, 2005). In *Greenberg,* the court

28

found that alimony is not the type of subject matter the Thirteenth Amendment was designed to address. *Id.* Further, the court explained that

> the Florida alimony provisions do not employ the use of physical or legal coercion to force people into involuntary servitude. Although Floridians who are required to pay alimony must do so or face consequences, such as being held in contempt of court, the district court correctly concluded that this does not amount to involuntary servitude.

*Id.* Having no mandatory authority on point for this specific issue, this Court finds the view of its sister circuit persuasive. As such, this Court finds that Ms. Loubser's claim, that payment of alimony resulted in involuntary servitude, is meritless. Consequently, summary judgment is **GRANTED** in favor of Defendants as to Ms. Loubser's Thirteenth Amendment claim.

     (5)    <u>Section 1994</u>

Lastly, Ms. Loubser alleges a violation of § 1994, a post-Civil War civil rights statute which states, in part:

> § 1994. Peonage abolished
>
> The holding of any person to service or labor under the system know as peonage is abolished and forever prohibited...the voluntary or involuntary service or labor of any persons as peons, in liquidation of any debt or obligation, or otherwise, are declared null and void.

42 U.S.C. §1994 (2000). Ms. Lousber generally contends that all Defendants have violated this statute. (Second Amended Complaint ¶ 566-570. 573-577, 579, 581, 583, 586-587, 592-594, 597-600, 602-603, 614-616, 625-626, 630-634, 637-638, 656-658). From what can be gathered from Ms. Loubser's submissions, she appears to allege that Defendants conspired to inflate the value of her assets in the divorce proceeding, thus requiring her to pay a higher amount in alimony to her ex-

29

husband Pala. Ms. Loubser cites to no authority for her proposition that an award of alimony under a divorce decree violates § 1994. The Seventh Circuit has repeatedly made clear that "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues)." *United States v. Hook*, 471 F.3d 766, 775 (7th Cir. 2006) (citing *United States v. Lanzotti*, 205 F.3d 951, 957 (7th Cir. 2000)). *See also United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991). Merely asserting a violation, without further explication, does not present an issue for review and results in a waiver of that issue. *See Hook*, 471 F.3d at 775. Moreover, Ms. Loubser's claim is without merit because legal obligations under a divorce decree cannot be equated with peonage. Therefore, summary judgment is **GRANTED** in favor of Defendants as to Ms. Loubser's claims under § 1994.

## VI. CONCLUSION

Viewing the record in the light most favorable to the non-movant, Ms. Loubser cannot demonstrate that Defendants violated her statutory or constitutional rights, nor can she set forth any genuine issues of material fact.

Based on the foregoing, Ms. Loubser's Motion for Extension of Time (Docket No. 592) and Motion to Amend (Docket No. 598) are **DENIED** as Moot. Defendants Justice, Justice Law Office, and Montine's Motion to Strike Plaintiff's Affidavit (Docket No. 611) is **DENIED** and their Motion to Strike Plaintiff's Response and Objection to Summary Judgment (Docket No. 612) is **GRANTED**. Defendants Hoover, Pala and Weist's Motion to Strike Plaintiff's Affidavit (Docket No. 615) is **GRANTED IN PART, DENIED IN PART** and their Motion to Strike Plaintiff's Response and Objection is **GRANTED IN PART, DENIED IN PART**. (Docket No. 616). Ms.

Loubser's Motion to Strike Defendant Dechert's Motion for Summary Judgment is **DENIED**. (Docket No. 624). Further, the following Summary Judgment Motions are **GRANTED:** Defendant Dechert's (Docket No. 583), Defendants Justice, Justice Law Office, and Montine's (Docket No. 573), Defendants Hoover, Pala, and Weist's (Docket No. 576), Defendant Traylor's (Docket No. 578), and Defendants Mrs. Fishel, Mr. Fishel, Smith, and WCTA's (Docket 587). The Court directs the Clerk to enter judgment in favor of Defendants Dechert, Justice, Justice Law Office, Montine, Hoover, Pala, Weist, Traylor, Mrs. Fishel, Mr. Fishel, Smith and WCTA and against Plaintiff Ms. Loubser, on the federal claims asserted in the Second Amended Complaint (Docket No. 210). Each party should bear its own costs.

**SO ORDERED.**
**DATED: March 30, 2009**

_/s/ ALLEN SHARP_

**ALLEN SHARP, JUDGE**
**UNITED STATES DISTRICT COURT**