# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION AT LAFAYETTE

| | | |
|---|---|---|
| ANNARÉ L. LOUBSER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 4:04-cv-75-AS |
| | ) | |
| INDIANA ABSTRACT & | ) | |
| TITLE CO., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court *sua sponte*. Almost five years ago, plaintiff Annaré Loubser brought suit against more than forty individuals, alleging a myriad of civil rights violations. On March 30, 2009, this Court granted summary judgment in favor of all defendants of record with the exception of three: the Indiana Abstract & Title Co., Theresa Lepper, and David Stone. That same day, this Court served notice upon Ms. Loubser that it was considering summary judgment with regard to the remaining defendants.

In its March 30th order, this Court quoted the Honorable Judge Tinder's language in Indianapolis Minority Contractions Association, Inc. v. Wiley, 1998 WL 1988826 (S.D. Ind. May 13, 1998), aff'd 187 F.3d 743 (7th Cir. 1999) prior to his elevation to the Seventh Circuit Court of Appeals, as follows:

> This case illustrates the difference between rhetoric and proof in a court of law . . . . As seen through the exacting lens of the summary judgment process, the Plaintiffs' bold but unsupported claims fail. While perhaps persuasive as rhetoric, the strong conclusions of the Plaintiffs . . . do not survive the careful scrutiny required in litigation.

<u>Id</u>. That language is similarly appropriate here, where, despite adopting over 500 pages of repetitive documents, Ms. Loubser has failed to proffer any evidence of her claims.[1] While much of the material upon which Ms. Loubser relies in opposition to summary judgment was previously stricken, even considering this evidence, summary judgment is nonetheless appropriate.

## I. STANDARD OF REVIEW

According to the Federal Rules of Civil Procedure, summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Federal Rules of Civil Procedure Rule 56(c). As the famous trilogy of 1986 summary judgment cases from the Supreme Court reiterates, "[s]ummary judgment . . . is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986). <u>See also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 261 (1986) (noting that all

---

[1]  Ms. Loubser adopted the following documents, each of which was previously filed with this Court in support of other motions: Docket No. 386 (31 pages), Docket No. 593 (68 pages), Docket No. 594 (26 pages), Docket No. 595 (70 pages), Docket No. 596 (27 pages), Docket No. 597 (58 pages), Docket No. 599 (10 pages), Docket No. 600 (22 pages), Docket No. 601 (26 pages), Docket No. 602 (58 pages), Docket No. 603 (10 pages), Docket No. 609 (13 pages), Docket No. 618 (7 pages),  Docket No. 619 (12 pages), Docket No. 620 (19 pages), Docket No. 621 (5 pages), Docket No. 622 (4 pages), Docket No. 623 (4 pages), Docket No. 624 (3 pages), Docket No. 627 (19 pages), and Docket No. 628 (12 pages).

evidence must be viewed in the light most favorable to the party opposing summary judgment); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (same).

The Seventh Circuit famously stated that summary judgment is "the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." Schacht v. Wisconsin Dept. of Corrections, 175 F.3d 497, 504 (7th Cir. 1999) (Wood, J.) (overturned on other grounds).

With regard to *sua sponte* considerations of summary judgment, the Court of Appeals' decision in Simpson v. Merchants Recovery Bureau, Inc., 171 F.3d 546, 549 (7th Cir. 1999) (Kanne J.), is instructive, stating:

> As a general rule, a district court lacks the power to grant summary judgment *sua sponte* unless the party against whom summary judgment was entered had (1) proper notice that the district court was considering entering summary judgment and (2) a fair opportunity to present evidence in opposition to the court's entry of summary judgment.

Id. (internal citations omitted).

Here Ms. Loubser was given notice by this Court's March 30th order, and an opportunity to be heard, which she seized in the form of her response, filed on April 28, 2009. (Docket No. 633).

II. FACTS

As this Court stated in its March 30th order, "Ms. Loubser's claims principally stem

3

from allegations that her state divorce proceedings were fixed as a result of a conspiracy against her to deprive her of her livelihood, due to her national origin." Loubser v. U.S., __ F.Supp.2d __, 2009 WL 873996 2009 at 1 (N.D. Ind. Mar. 30, 2009) (noting that Ms. Loubser claims that the conspiracy was also intended to destroy the impartiality of judges and state employees in her divorce proceeding, deprive her of her livelihood, deny her due process of law, deny her the pursuit of happiness, deny her equal protection of the law, and subject her to involuntary servitude).

This Court will now detail Ms. Loubser's allegations against the remaining Defendants and her evidence thereof.

A.   The Indiana Abstract & Title Co. and Employee Theresa Lepper

Ms. Loubser's allegations against Theresa Lepper and her employer, the Indiana Abstract & Title Company, arise out of Ms. Loubser's belief that the home she shared with her ex-husband was valued in such a manner as to deprive her of her "livelihood" in the course of her divorce proceedings.

Lepper's deposition shows that she worked for Indiana Abstract and Title Company and helped run her father's business, Donald Webber Mortgage. (Docket No. 603 at ex. 155). Lepper also stated that she had dealings with Terry Smith, who was a co-owner of the White County Title Company, a previously dismissed defendant. Id.

Billing records from the office of Attorney R. Dennis Hoover (Ms. Louber's ex-

4

husband's divorce attorney), show that Hoover met with Lepper four times pursuant to the dissolution of Ms. Loubser's marriage, once to discuss "home loans, appraisals, home improvements." (Docket No. 603-20 at 77, 80, 82).

In an April 22, 2003 fax, Hoover told Lepper that they needed documentation from potential lenders, including possibly her father's mortgage company, regarding potential mortgage options for the marital home following Ms. Loubser's divorce. (Docket No. 603-18 at 48).

Ms. Loubser argues that: (1) the fax and the deposition show a "concerted act" to ensure that she "could not get title documents" from the Indiana Abstract and Title Company, (2) the fax and the deposition prove that Donald Webber Mortgage refinanced the marital home without an appraisal after the marriage dissolution, and (3) the billing records from Hoover's office prove concerted effort to inflate the pre-marriage value of the marital home.

In addition, according to Ms. Loubser's affidavit and that of her friend Melissa Kilmer, on August 9, 2001, Lepper prevented Ms. Loubser from entering the home she had shared with her estranged husband and threw her belongings out of the house. (Docket No. 602, 603-30 at 2).

B.   David W. Stone, IV

David Stone is an attorney who was retained by Ms. Loubser for the purpose of appealing her divorce settlement. Ms. Loubser initially wrote Stone a very enthusiastic

thank-you letter, but she now alleges that she was pressured to do so by others. (Docket No. 633 at 5).

Ms. Loubser's complaints about Stone are as follows: (1) he misidentified the correct year on a tax document, (2) he ignored her protests regarding the valuation of the marital home, (3) he ignored faxes from Ms. Loubser, detailing her perception that the judge in her divorce proceeding was biased, and (4) he refused to file a Motion for Relief of Judgment or a Motion for Retrial in her divorce case. Id. at 4-6. Ms. Loubser argues that each of these acts was an overt act in furtherance of the conspiracy to deprive her of her livelihood. Her evidence thereof consists of Stone's answers to her interrogatories, her own affidavits, and the faxes she sent to Stone while he was representing her. Id. at 5-6.

### III. ANALYSIS

Ms. Loubser alleged a number of constitutional violations in her complaint. With regard to the remaining defendants, however, several of these arguments seem inapplicable and, indeed, Ms. Loubser does not perpetuate them in opposing summary judgment.[2] To the extent that Ms. Loubser retains the claims enumerated in footnote 2, summary judgment in favor of the defendants is nonetheless appropriate for reasons already detailed in this Court's

---

2     For example, there is nothing in Ms. Loubser's motion opposing summary judgment suggesting that she is presently alleging violations of section 1981, which guarantees the right to make and enforce contracts. 42 U.S.C. § 1981 (2000). The same can be said about her Thirteenth Amendment allegations and her section 1994 allegations, both of which have to do with slavery and peonage. U.S. Const. Amend. XIII, 42 U.S.C. §1994 (2000).

6

March 30th order. See Loubser, 2009 WL 873996 at Parts V.C.(1), V.C.(4), and V.C.(5) (N).

Thus, we are left with Ms. Loubser's alleged violations of her rights under 42 U.S.C. §1983 and 42 U.S.C. §1985.

A section 1983 violation occurs where a deprivation of a right secured by the Constitution or the laws of the United States occurs at the hands of a government official, acting under color of state law. See Christensen v. County of Boone, IL, 483 F.3d 454, 459 (7th Cir. 2007). Since neither Lepper, nor her employer, nor Stone are government officials, the only way Ms. Loubser can prevail on her section 1983 claim is if the defendants conspired with government officials in depriving Ms. Loubser of her constitutional rights.

To establish section 1983 liability under the so-called 'conspiracy theory,' Ms. Loubser must demonstrate the following: (1) a state official and the defendants reached an understanding to deprive Ms. Loubser of her constitutional rights; and (2) the defendants were willful participants in joint activity with the state or its agents. See Reynolds v. Jamison, 488 F.3d 756, 764 (7th Cir. 2007) (quoting Williams v. Seniff, 342 F.3d 774, 785 (7th Cir. 2003)).

Similarly, in order to establish liability under section 1985, Ms. Loubser must prove "a conspiracy to deprive [her] of equal protection under the law . . . but the conspiracy must be motivated by racial, or other class-based discriminatory animus." Smith v. Gomez, 550 F.3d 613, 617 (7th Cir. 2008).

Because both of her theories of liability rely upon the existence of a conspiracy, if none existed then Ms. Loubser's claims fail. Examination of hundreds of pages of submitted briefs, affidavits, and other materials, reveals that there is no evidence in the record establishing the existence of a conspiracy.

Turning first to Lepper and her employer, the Indiana Abstract & Title Company, it is undisputed that Lepper had contacts with Ms. Loubser's ex-husband's attorney relating to the divorce case. It is further undisputed that Lepper assisted her father in running his business— Don Webber Mortgage. Indeed, even assuming all of Ms. Loubser's proffered evidence is true, is nonetheless insufficient to show that Lepper or her employer, along with any other alleged co-conspirator "agreed to inflict injury upon" Ms. Loubser, or that "they acted with a single plan, the general nature and scope of which was known to each conspirator." Green v. Benden, 281 F.3d 661, 665 (7th Cir. 2002). Additionally, for the purposes of Ms. Loubser's section 1983 claim, there is no evidence suggesting that Lepper or her employer conspired with a government official.

With regard to Stone, it is undisputed that Ms. Loubser sent him numerous faxes detailing her theories about the case. His refusal to follow her instructions about how her case should be handled did not violate her civil rights. Further, there is insufficient evidence to prove that Stone conspired with anyone, let alone a government official, as required by section 1983.

In short, as to each of the three remaining defendants, the record is devoid of evidence

that would "permit a reasonable jury to conclude that a meeting of the minds had occurred and that the parties had an understanding to achieve the conspiracy's objectives." Hernandez v. Joliet Police Dept., 197 F.3d 256, 263 (7th Cir. 1999).

IV. CONCLUSION

For the reasons stated herein, the record, as construed in favor of Ms. Loubser, fails to show a genuine issue of material fact. Accordingly, summary judgment is hereby **GRANTED** in favor of the Indiana Abstract & Title Co., Theresa Lepper, and David Stone. Given that there is no just reason for delay, this case is now considered closed with each party to bear its own costs.

**SO ORDERED**.

**DATED: May 29, 2009**

                                            /s/ ALLEN SHARP
                                      **ALLEN SHARP, JUDGE**
                                      **UNITED STATES DISTRICT COURT**